The last case on for argument is Kinojuz I.P. v. Julian Iguilini. Good morning. Good morning. Mr. Erlich and Mr. Lambert, you may sit down. Thank you. Good morning, Your Honors. I'm not a lawyer, so I would like to present my case in the language. Essentially, in this matter, the plaintiff alleged that on December 3, 2007, in the country of Kazakhstan, it was executed contract with defenders to jointly raise funds to produce a movie. So that roughly $200,000 was wired by the plaintiff to defendant. Bank and mostly under personal use. So plaintiff also complained that they knew about my conviction from the tax evasion scheme, which was in 1998. And if they knew, they would not do any business with us. I just want to make small remarks here. So before this contract was done, so conviction fellow, which is me, sent merchandise to that party. It's over $4 million, which was in that position. So there was a few more complaint, but plaintiff was not able to present any credible evidence or give a consistent testimony to support them. So I will not waste the time to discuss this here. So maybe in the next trial. Our defense was pretty simple. That's a contract which was presented by the plaintiff as base where they complained was completely bogus, fake. And they were submitted under the deposition which they interfered this contract. And that was told to the district court? Oh, yes, of course, that's what's done. So the defendants, which me and Mr. Dubinian, when this contract was presented, made it in December in Kazakhstan. So we wasn't there even. So his explanation was actual, I don't think I have enough time. So I will continue because I mean, all this explanation, I mean, in the case, right. And please understand that we have read your papers. So yes, yes, yes. We are familiar with what you have filed with this court and the record. So it was different contract, which is was done by Mr. Dubinian. So I mean, it was in July 1st, 2007. So it's almost six months before this contract was sent. The explanation why they did it, so they have certain explanation. Because they want to send the money, etc., etc. So the plaintiff in the first contract has initial obligation to raise it $800,000. And our party supposed to raise it, it's $2.2 million, in order to do production on the movie. But after the failing to do so, plaintiff and defendant executed amendments to the contract, where plaintiff agreed to purchase medical goods from defendant, which was already in his position. So because we sent this many, many months before. So instead of to just, I mean, send us money, so we tell them, use this money for the movie production. So sell the goods, raise it, so whatever necessary, the amount of the money. But you must invest $800,000 in order to do production. So the plaintiff took position of the goods following the signing of the agreement. And to transfer the money to defendants, which defendants roughly dispose it as they please. After that, plaintiff did not take any additional action, or made any additional payment for medical goods, or for movie production that would trigger any additional contractual obligation to defend. And that finally plaintiff filed a complaint in this matter, based on the counterfeit contract, to avoid financial obligation under the real contract. I can explain it, but sorry, I mean... You're just about out of time, so you might want to... So, I mean, finally, so the my, our defense, we have amendment in the contract, which the judge, according to Mr. Lombard, so he got certain time to review. It was amendment to the contract. It was not certified, but it translated. But this amendment was in the court for, I don't know, for over three years. The amendment was there. Yes, of course, for over three years. And it was never complained why they don't certify. In the first date of the trial. So the judge give opportunity to the plaintiff, and he something wrong. Mr. Lombard, a plaintiff, and the court, a translator, speaks fluently Russian. So for them, it's no mistake whatever they can read it. The only complaint which the plaintiff attorney bring, which they not certified. So we try find it law. It's no law, which is have to be, the complaint must to be, I mean, the amendment must to be certified the translation. But for three years, for all this time, so they have enough time to tell us, you must certify all this necessary documents whatever needed. And your argument to us is that they should have told you, so then we would have had the amendment in the record. If this amendment will be in the trial, we will have no, I mean, the judge will be finding difference between sending the money, and if we stole this money, or, I mean, this case will be completely different. Also, the last thing, I mean, the last thing which I mean argue, regarding the mispresentation. Again, we couldn't find it the law. If a person who has criminal record must to come and announce that and say, look, I'm a criminal, you want to do business with me or not? Besides the point, I give them all the merchandise. I give them all the money, whatever it is. And this is what just, I mean, excuse from them to just find a solution. Don't pay us for the merchandise, whatever they owe us. Yeah, but we will go for the next trial shortly with them. And just accuse us for stolen the money. How we can stole them if we give them the money? And all these documents, all these amendments, exactly show our truthfulness. I'm sorry, sorry. No, no, we understand. Thank you very much. We have your argument, and we'll hear from Mr. Lambert. Good morning, Your Honors. May it please the Court, I'm George Lambert, an attorney for Plaintiff Appellee here, Kenosha's IP. Mr. Ehrlich just mentioned that there were some procedural inconsistencies during the trial. There was no basis whatsoever. He had every document he wanted to present. Mr. Ehrlich preferred not to use interpreters, translators, professional translators for his documents. Whatever shortcomings of the documents could be found in any of those documents, he should have blamed himself. I personally didn't see any shortcomings in any translations or in any documents that were presented at the trial. The judge, the Honorable U.S. Majesty Judge Pohorelov was extremely generous to the defendants in this case. He gave them a very large opportunity to present their defenses. Actually, it took six days of the bench trial to resolve this issue, and there was no basis to disturb it. I wanted to mention one fact. Mr. Ehrlich mentioned that once the money was received on the account under his control, then he started to make payments. Well, actually, it's very characteristic and typical for the conduct of defendants so that on the third day of receiving $200,000 on the account, they immediately purchased a tourist package for a vacation in the Caribbean. They issued the checks to themselves for $10,000, $5,000. They took out cash from the branches, and within approximately six and a half weeks, the money was gone. They spent it all. Mr. Ehrlich, he also paid $15,000 to his associate or co-conspirator, Mr. Dubinin, and that was it. There was no indication of any kind that they attempted to do anything for the movie project. They just obtained the money on fraudulent could do that. With regard to Mr. Ehrlich's conviction, obviously, that's admissible. It was admissible at the trial. It's interesting that he spent nearly nine years in prison. Mr. Ehrlich could correct me. He was released on November the 10th, 2005. Within three months, they started a bogus company under the name IRP International, and several months later, Mr. Ehrlich was a mastermind of a scheme to take the money from Kinajus for $200,000. The main point here is the magistrate judge duly reflected that in the findings of fact and conclusions of law is that the defendants didn't undertake and showed anything that they had in mind to assist in the movie project. They just spent it all as soon as they could do that without any justification whatsoever. Mr. Ehrlich's main argument was that since he brought some merchandise to Kazakhstan, someone had to pay for that. But I need to address that point as well. Mr. Ehrlich admitted to the trial that some of the merchandise came from Red Cross and was from other non-commercial sources. In other words, that merchandise was brought illegally to Kazakhstan. There were problems to release from the customs offices, and ultimately, he couldn't obtain back his money. But that's completely unrelated to Kinajus. Kinajus is a cinema studio, a firm that does nothing else except for the movies. I'm curious just a little bit about the amendment, the purported amendment that we talked about on the appellate side here. Is there any discussion of that in the record below? Of course. The court duly reviewed everything, including the amendment. Everything was before the court. The defendants had six days to explain all the documents should be considered, and everything was considered. So there was nothing. Isn't it the point that Judge Pomerelsky specifically said to the defendants, if you want to rely on documents that are translated, you need to have the person who prepared the translation sign and certify, and then he gave them time to get that done. Isn't that what happened? I believe that's exactly what happened, that they had plenty of opportunity, time-wise and data-wise, to properly prepare exhibits for the trial. They chose not to, but then we cannot do everything for them, for the defendants to replace their documents with our own translations. That was their job, to present, and it wouldn't matter even if there was an amendment to the court. It wouldn't matter. As soon as the defendants came into possession of the money, so they started to spend it on everything, including Victoria's Secret, other things, nothing to do with the cinema project of my clients, Kinoju's IP. Thank you very much, Mr. Lambert. Thank you, Your Honor. Just one word, if you allow me. We'll give you one word. I'm sorry. Whatever Mr. Lambert says, I'm sorry, I'm not the lawyer. I mean, it's a full lie. The owners, Mr. Pogorelski, never say to give us any time to do translation. The only was Mr. Pogorelski did, and this is, we sent all the documents to you. He gave Mr. Lambert time to review that, see the language, just the language. I mean, see the wording. Thank you. And everything prepared, but thank you, I'm sorry. Thank you very much. Thank you both. We will reserve decision in this case as well. And that being the last case, I will ask the clerk, please, to adjourn court.